IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK MARTELL, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>X CORP.,<br><br>    Defendant. | Case No. 1:23-cv-5449<br><br>District Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge Beth W. Jantz |

**<u>MEMORANDUM IN SUPPORT OF X CORP.'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND .......................................................................................................... 2

III. LEGAL STANDARD ................................................................................................... 4

IV. ARGUMENT ................................................................................................................ 5

    A. The Complaint Should Be Dismissed In Its Entirety ............................................. 5

        1. PhotoDNA Does Not Scan Facial Geometry And Therefore Does Not Collect "Biometric Identifiers" Or "Biometric Information" Under BIPA . 5

        2. The Hashes Created By PhotoDNA Are Not "Biometric Identifiers" Or "Biometric Information" Under BIPA Because They Cannot Be Used To Identify Persons Depicted In Images Uploaded To Twitter …………….. 6

        3. The Communications Decency Act Bars Plaintiff's Claims……………….7

    B. In The Alternative, This Court Should Dismiss Plaintiff's Section 15(d) Claim And His Claim for Enhanced Statutory Damages ............................................... 10

        1. Plaintiff's Section 15(d) Claim Should Be Dismissed Because He Does Not Plausibly Allege that X Disclosed His Biometric Data…………….. 11

        2. Plaintiff's Claim for Enhanced Statutory Damages Should Be Dismissed Because He Fails to Plead Recklessness or Intent……………………….12

V. CONCLUSION ........................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Abcarian v. McDonald*,
 617 F.3d 931 (7th Cir. 2010) ..................................................................................................5

*Allen v. Brown Advisory, LLC*,
 41 F.4th 843 (7th Cir. 2022) ....................................................................................................4

*Allen v. GreatBanc Trust Co.*,
 835 F.3d 670 (7th Cir. 2016) ...................................................................................................4

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................................5

*Baker v. Nw. Medicine Lake Forest Hosp.*,
 2017 WL 2908766 (N.D. Ill. July 7, 2017) ..............................................................................5

*Barrett v. Rosenthal*,
 146 P.3d 510 (Cal. 2006) .........................................................................................................8

*Bonilla v. Ancestry.com Operations Inc.*,
 574 F. Supp. 3d 582 (N.D. Ill. 2021) .......................................................................................8

*Brittain v. Twitter, Inc.*,
 2019 WL 2423375 (N.D. Cal. June 10, 2019) .........................................................................9

*Burke v. 401 N. Wabash Venture, LLC*,
 714 F.3d 501 (7th Cir. 2013) ...................................................................................................5

*Carpenter v. McDonald's Corp.*,
 580 F. Supp. 3d 512 (N.D. Ill. 2022) .......................................................................................7

*Daichendt v. CVS Pharmacy, Inc.*,
 2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) ...........................................................................7

*Dehen v. Does 1-100*,
 2018 WL 4502336 (S.D. Cal. Sept. 19, 2018) .........................................................................9

*Fields v. Twitter, Inc.*,
 217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) ..........................9

*Force v. Facebook, Inc.*,
 934 F.3d 53 (2d Cir. 2019) .....................................................................................................10

*Fyk v. Facebook, Inc.*,
   2019 WL 11288576 (N.D. Cal. June 18, 2019) ...................................................................10

*Gorgas v. Amazon.com, Inc.*,
   2023 WL 4209489 (N.D. Ill. June 23, 2023) .......................................................................6

*Heard v. Becton, Dickinson & Co.*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020) ............................................................................4, 11

*Hogan v. Amazon.com, Inc.*,
   2022 WL 952763 (N.D. Ill. Mar. 30, 2022) ........................................................................3

*Khader v. Samsung Elecs. Am., Inc.*,
   2022 WL 267917 (N.D. Ill. Jan. 28, 2021) .........................................................................3

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ............................................................................................9

*King v. Facebook, Inc.*,
   572 F. Supp. 3d 776 (N.D. Cal. 2021) ..............................................................................10

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) .........................................................................................8

*Lewis v. Google LLC*,
   461 F. Supp. 3d 938 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) ...............8

*McGoveran v. Amazon Web Servs., Inc.*,
   2021 WL 4502089 (D. Del. Sept. 30, 2021) .......................................................................6

*Morton v. Twitter, Inc.*,
   2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) .....................................................................8

*Namuwonge v. Kronos, Inc.*,
   418 F. Supp. 3d 279 (N.D. Ill. 2019) ................................................................................12

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ..............................................................................................8

*Rivera v. Google Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) ............................................................................6, 7

*Rogers v. CSX Intermodal Terminals, Inc.*,
   409 F. Supp. 3d 612 (N.D. Ill. 2019) ................................................................................12

*Taha v. Int'l Bhd. of Teamsters, Local 781*,
   947 F.3d 464 (7th Cir. 2020) ..............................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..................................................................................................3

*Triad Assocs., Inc. v. Robinson*,
   10 F.3d 492 (7th Cir. 1993) ....................................................................................12

*Trio v. Turing Video, Inc.*,
   2022 WL 4466050 (N.D. Ill. Sept. 26, 2022) ..........................................................6

*Wright & Associated Ins. Cos. Inc.*,
   29 F.3d 1244 (7th Cir. 1994) ....................................................................................3

*Zahn v. N. Am. Power & Gas, LLC*,
   815 F.3d 1082 (7th Cir. 2016) ..................................................................................2

## STATUTES

740 ILCS 14/1 *et seq.* ............................................................................................................1

740 ILCS
   14/10 ................................................................................................................... 5, 7
   14/15 ................................................................................................................... 3, 5
   14/15(d) ..................................................................................................................11
   14/20(1) ...................................................................................................................4
   14/20(2) ...................................................................................................................4

47 U.S.C.
   § 230 ........................................................................................................ 2, 7, 8, 10
   § 230(c)(2)(A) ............................................................................................. 8, 9, 10
   § 230(e)(3) ...............................................................................................................8
   § 230(f)(2) ................................................................................................................8

## RULES

Fed. R. Civ. P. 12(b)(6) .............................................................................................1, 3, 4, 12

## OTHER AUTHORITIES

*Identifier*, Merriam-Webster, https://www.merriam-webster.com/
   dictionary/identifier ................................................................................................7

*Identify*, Black's Law Dictionary (11th ed. 2019) ...........................................................7

Defendant X Corp. ("X") respectfully submits this memorandum in support of its motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

## I. INTRODUCTION

This case arises from X's use of a technology called "PhotoDNA" to identify and remove known images of child exploitation from its online platform, formerly known as "Twitter" and now called the X platform. Plaintiff Mark Martell claims that X used PhotoDNA to collect his biometric information and biometric identifiers in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"). According to Plaintiff, BIPA requires X to notify every Illinois resident who is depicted in an image uploaded to Twitter by anyone—regardless of whether the depicted person uses Twitter or has a Twitter account—that X is collecting the person's biometric information and biometric identifiers, and to obtain the person's consent. Plaintiff makes that claim even though he does not and cannot allege that PhotoDNA enables X to identify persons depicted in images uploaded to Twitter. If Plaintiff's theory carried the day, the only way for X (or any other platform) to comply with BIPA would be to halt its use of PhotoDNA and abandon its good-faith efforts to identify and remove child-exploitation material from its platform.

Plaintiff's theory should not carry the day, his understanding of BIPA is incorrect, and the Complaint should be dismissed in its entirety for three separate reasons. *First*, the Complaint does not plausibly allege that X collects "biometric identifiers" or "biometric information." Plaintiff's claims are premised entirely on his conclusory allegation that PhotoDNA collects facial geometry scans—and that allegation is based entirely on a website describing how PhotoDNA operates. But that website clearly states that PhotoDNA is *not* facial recognition software, which necessarily means that it does *not* collect facial geometry scans. *Second*, Plaintiff does not allege that PhotoDNA enables X to identify persons depicted in images uploaded to Twitter; to the contrary,

the website upon which he relies clearly states that PhotoDNA *cannot* be used to identify such persons. *Third*, Plaintiff's claims are barred by the Communications Decency Act, 47 U.S.C. § 230 ("CDA"), because he seeks to hold X liable for its good-faith actions to identify and remove child-exploitation and other unlawful and objectionable material from its platform.

In the alternative, the Court should dismiss Plaintiff's claim under Section 15(d) of BIPA because the Complaint does not plausibly allege that X disclosed his "biometric identifier" or "biometric information" to anyone. The Court should also dismiss Plaintiff's claim for enhanced statutory damages because such damages are available only when a defendant has acted intentionally or recklessly, and Plaintiff does not plausibly allege either state of mind.

## II.     BACKGROUND[1]

X operates an online platform—now called "X" and formerly known as "Twitter"—that allows users to post text, photos, and videos. Dkt. 1-2 ¶ 7. Plaintiff alleges that he is an Illinois resident whose biometric identifiers and biometric information were collected and stored by X when he uploaded an image of his face to Twitter around March 2023. *Id*. ¶¶ 17, 32. Plaintiff claims that X collected and stored his biometric data through its use of Microsoft's "PhotoDNA" software. *Id*. ¶¶ 24-30, 32-33.

X uses PhotoDNA to identify and remove child-exploitation and pornographic images from Twitter. *Id.* ¶¶ 8, 24 & n.4. Relying exclusively on a website describing how PhotoDNA operates, https://www.microsoft.com/en-us/photodna ("PhotoDNA Webpage") (Exh. A hereto), Plaintiff alleges that PhotoDNA "creates a unique digital signature (known as a 'hash') of an image which is then compared against signatures (hashes) of other photos to find copies of the same image,"

---

[1] The facts alleged in the Complaint (Dkt. 1-2) and recited here are assumed true only for purposes of this motion. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016).

and that the technology compares the hash with a database containing hashes of known child-exploitation images. *Id.* ¶¶ 24-25 & nn.4-5; Exh. A. In making that allegation, Plaintiff replicates this image from the Webpage:



Dkt. 1-2 ¶ 25. Then, without any factual support or explanation, Plaintiff asserts that, "[a]s is clear from the exemplar image above, creating a unique digital signature, or 'hash,' from any image containing a person's face necessitates creating a scan of [the] person's facial geometry," which is a type of "biometric identifier" under BIPA. *Id.* ¶¶ 27, 30.

But the PhotoDNA Webpage, which is central to Plaintiff's claim and incorporated by reference into the Complaint,[2] says nothing about "facial geometry." In fact, the Webpage directly contradicts Plaintiff's conclusory allegation that PhotoDNA scans a person's "facial geometry,"

---

[2] The Court may consider the PhotoDNA Webpage in resolving this motion. As the Supreme Court has held, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A document is incorporated by reference if it is "referred to in the complaint and central to the [plaintiff's] claim." *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *2 (N.D. Ill. Mar. 30, 2022) (citing *Wright & Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). Because a BIPA claim can proceed only if the defendant is alleged to have possessed, obtained, or disclosed biometric identifiers or information, *see* 740 ILCS 14/15, and because the Complaint relies on the PhotoDNA Webpage to support its otherwise conclusory allegation that X captures biometric data (a facial geometry scan), the Complaint incorporates by reference the Webpage. *See Khader v. Samsung Elecs. Am., Inc.*, 2022 WL 267917, at *2 (N.D. Ill. Jan. 28, 2021) (holding that a document that "is both referred to in the plaintiff's complaint and central to his … claims" is incorporated by reference into the complaint) (internal quotation marks and citations omitted).

stating that "PhotoDNA is not facial recognition software and cannot be used to identify a person or object in an image," and that a "PhotoDNA hash is not reversible, and therefore cannot be used to recreate an image." Exh. A hereto.[3] In addition, Plaintiff does not allege that X can use the hashes created by PhotoDNA to identify persons depicted in uploaded images.

Despite these deficiencies, Plaintiff claims that X violated BIPA by collecting, using, and disclosing his "biometric identifiers" and "biometric information." Dkt. 1-2 ¶¶ 24-41, 48-61. Plaintiff purports to bring this action not only for himself, but also on behalf of a putative class of "[a]ll Illinois residents whose biometric identifiers and/or biometric information were collected, captured, otherwise obtained, stored, used, transmitted, or disseminated by Defendant." *Id*. ¶ 42. Plaintiff seeks statutory damages of "$5,000 for each and every intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, alternatively, statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) if Defendant's violations are found to have been committed negligently," in addition to injunctive and other forms of relief. *Id.* p. 15.

### III. LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss for failure to state a claim, a plaintiff must allege enough facts to state a claim that is plausible on its face." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (internal quotation marks omitted). "[T]he *Twombly-Iqbal* pleading standards require the plaintiffs to cross the line from the 'possible' violation to the 'plausible.'" *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 677 (7th Cir. 2016). "A claim has facial plausibility when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Heard v. Becton, Dickinson &*

---

[3] The Webpage also states that "Microsoft donated PhotoDNA to the National Center for Missing & Exploited Children (NCMEC) … [and] provide[s] this valuable technology for free to qualified organizations including technology companies, developers, and non-profit organizations for the purpose of combatting child exploitation." *Id*.

4

*Co.*, 440 F. Supp. 3d 960, 964 (N.D. Ill. 2020) (Pallmeyer, C.J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That said, a court may not accept as true allegations that are conclusory, "sheer speculation," unwarranted deductions of fact, or unreasonable inferences. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). And significant here, "[a] document outside the pleadings controls when it is incorporated by reference … and directly contradicts the assertions in the complaint." *Baker v. Nw. Medicine Lake Forest Hosp.*, 2017 WL 2908766, at *4 (N.D. Ill. July 7, 2017) (citing *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010)); *see also Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505-06 (7th Cir. 2013) (a court "is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material") (citation omitted).

## IV. ARGUMENT

### A. The Complaint Should Be Dismissed In Its Entirety

Plaintiff's claims should be dismissed in their entirety for three reasons.

#### 1. PhotoDNA Does Not Scan Facial Geometry And Therefore Does Not Collect "Biometric Identifiers" Or "Biometric Information" Under BIPA

BIPA imposes certain restrictions on how private entities possess, obtain, retain, use, disclose, and destroy biometric identifiers and biometric information. *See* 740 ILCS 14/15. BIPA defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," but expressly excludes from the definition mere "photographs." *Id*. 14/10. BIPA defines "biometric information" to mean "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual," but expressly excludes "information derived from items" that are "excluded under the definition of biometric identifiers." *Id*.

5

Plaintiff does not allege that X collected his retina or iris scans, fingerprints, voiceprints, or hand scans; rather, he alleges only that X collected scans of his "facial geometry." Dkt. 1-2 ¶¶ 27, 32. As noted, Plaintiff relies exclusively on the PhotoDNA Webpage to support that allegation. *Id*. ¶¶ 24-27 & nn.4-5. Yet the Webpage directly refutes Plaintiff's submission that PhotoDNA collects facial geometry scans of persons depicted in images uploaded to Twitter, stating that "PhotoDNA is not facial recognition software and cannot be used to identify a person or object in an image." Exh. A. As this Court has recognized, facial geometry scans are collected by "facial recognition technology." *See Gorgas v. Amazon.com, Inc.*, 2023 WL 4209489, at *4 (N.D. Ill. June 23, 2023); *Trio v. Turing Video, Inc.*, 2022 WL 4466050, at *12 (N.D. Ill. Sept. 26, 2022). Because PhotoDNA is not facial recognition software, it necessarily follows that Plaintiff does not plausibly allege that PhotoDNA collected or stored scans of his facial geometry.

Thus, Plaintiff fails to state any claim under BIPA, and the Complaint should be dismissed in its entirety. *See McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021) (dismissing BIPA claims because plaintiffs failed to allege that defendants collected or stored in Illinois any biometric data).

### 2. The Hashes Created By PhotoDNA Are Not "Biometric Identifiers" Or "Biometric Information" Under BIPA Because They Cannot Be Used To Identify Persons Depicted In Images Uploaded To Twitter

As noted, the Complaint does not allege that PhotoDNA allows X to identify persons depicted in images uploaded to Twitter. Nor can the Complaint make such an allegation, as the PhotoDNA Webpage upon which it relies clearly states that PhotoDNA "cannot be used to identify a person or object in an image" and that a "PhotoDNA hash is not reversible, and therefore cannot be used to recreate an image." Exh. A.

The definition of "biometric identifier" requires that the data be able to do just that— "identify a person." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) ("Each

6

specific item on the list, not surprisingly, fits within the meaning of the term 'biometric identifier,' that is, a biology-based set of measurements ('biometric') that can be used to identify a person ('identifier')."); *see also Identifier*, Merriam-Webster, https://www.merriam-webster.com/dictionary/identifier ("one that identifies"); *Identify*, Black's Law Dictionary (11th ed. 2019) ("[t]o prove the identity of (a person or thing)"); *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022) (noting that biometric identifiers are "biologically unique to each individual and, once compromised," place the individual "at a heightened risk for identity theft"). Similarly, "biometric information" is defined as information "based on an individual's biometric identifier *used to identify an individual*." 740 ILCS 14/10 (emphasis added); *see also Rivera*, 238 F. Supp. 3d at 1095 ("So whatever a private entity does in manipulating a biometric identifier into a piece of information, the resulting information is still covered by [BIPA] *if that information can be used to identify the person*.") (emphasis added).

The requirement that data in question be able to identify an individual is "the most foundational aspect of a BIPA claim," and Plaintiff's failure to allege that fact warrants dismissal of the Complaint. *Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022) (dismissing BIPA claims where plaintiffs did not allege that the technology in question "made defendant *capable of* determining their identities"). As noted, the Complaint nowhere alleges that PhotoDNA or the hashes it creates can be used to identify persons depicted in uploaded images. Indeed, any such allegation would be implausible because, as the PhotoDNA Webpage makes clear, PhotoDNA "is not facial recognition software and cannot be used to identify a person or object in an image." Exh. A. The Complaint therefore should be dismissed in its entirety.

### 3. The Communications Decency Act Bars Plaintiff's Claims

X's efforts to identify and remove child-exploitation and other objectionable materials from Twitter fall squarely within the preemptive scope of Section 230 of the CDA. Section 230

7

was "inten[ded] to promote active screening by service providers of online content provided by others." *Barrett v. Rosenthal*, 146 P.3d 510, 522-23 (Cal. 2006). And Section 230 provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. 230(e)(3).

"[C]ourts aim to resolve the question of § 230 immunity at the earliest possible stage of the case so that defendants entitled to § 230 immunity are saved from having to fight costly and protracted legal battles." *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009)) (internal quotation marks omitted). At the pleading stage, courts routinely dismiss claims under Section 230 with prejudice. *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358-60 (D.C. Cir. 2014); *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 592 (N.D. Ill. 2021); *Morton*, 2021 WL 1181753, at *6; *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 953-55, 963 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021).

Section 230(c)(2)(A) states that "[n]o provider … of an interactive computer service shall be held liable on account of … any action voluntarily taken in good faith to restrict access to or availability of material that the provider … considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2)(A). That provision bars Plaintiff's claims.

*First*, X is a provider of an "interactive computer service," which the CDA defines as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." *Id.* § 230(f)(2). Plaintiff alleges that X "operates Twitter, an online social media and social networking service" on which "users post texts, photos and videos" and interact with one another. Dkt. 1-2 ¶ 7. It follows that X is an interactive service

8

provider. *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) ("The prototypical service qualifying for [CDA] immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others.") (citation omitted); *Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *2-4 (N.D. Cal. June 10, 2019) (holding that Twitter is an "interactive computer service" provider and dismissing claim against Twitter with prejudice under the CDA); *Dehen v. Does 1-100*, 2018 WL 4502336, at *3-4 (S.D. Cal. Sept. 19, 2018) (same); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1120-22, 1129-30 (N.D. Cal. 2016) (same), *aff'd*, 881 F.3d 739 (9th Cir. 2018).

*Second*, Plaintiff seeks to hold X liable based on "action[s]" it has "voluntarily taken in good faith to restrict access to or availability of material that [it] considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2)(A). Specifically, Plaintiff alleges that X "has implemented software to police pornographic and other not-safe-for-work ('NSFW') images uploaded to the site," which "are then 'tagged' by Twitter as such, preventing them from being viewed by people"; that X "utilizes a software called 'PhotoDNA' to detect explicit images"; and that when Plaintiff uploaded the image upon which his claims are based, X "analyzed it for nudity" using the PhotoDNA software. Dkt. 1-2 ¶¶ 8, 24, 32. The PhotoDNA Webpage incorporated by reference in the Complaint—upon which Plaintiff bases his claims—adds that PhotoDNA is "a technology that aids in finding and removing known images of child exploitation," is provided to "technology companies … for the purpose of combatting child exploitation," and "assist[s] in the detection, disruption, and reporting of millions of child exploitation images." Exh. A.

Thus, the conduct alleged in the Complaint falls squarely within Section 230(c)(2)(A), which requires that Plaintiff's claims be dismissed. Aside from running afoul of the CDA,

declining to bar Plaintiff's claims under Section 230 would wreak enormous harm. Plaintiff's claims rest on the premise that PhotoDNA scanning involves the collection of biometric identifiers and information under BIPA, and therefore that X must (1) notify every Illinois resident depicted in images uploaded to Twitter of its collection of their biometric data and (2) obtain their written consent to that collection. As noted, Plaintiff does not and could not allege that PhotoDNA allows X to identify persons depicted in such images, or even to ascertain whether those persons are Illinois residents. Without that capability, X could not comply with BIPA's notice-and-consent regime. Thus, if Plaintiff's claims survived Section 230 preemption, the only way for X to comply with BIPA would be to halt its use of PhotoDNA entirely.

Such an outcome would undermine Section 230's foundational purpose, which is "to protect children from sexually explicit internet content." *Force v. Facebook, Inc.*, 934 F.3d 53, 63 (2d Cir. 2019) (internal quotation marks omitted). Indeed, Congress added Section 230(c)(2)(A) to the CDA in response to a court decision that "imposed liability where a service provider filtered its content in an effort to block obscene material." *Id*. at 63-64 & n.16. Accordingly, even if Plaintiff's claims could somehow be squared with BIPA, they would be preempted by Section 230 and should be dismissed. And because this fundamental flaw in Plaintiff's BIPA claims cannot be cured by amendment, the dismissal should be with prejudice. *See Fyk v. Facebook, Inc.*, 2019 WL 11288576, at *3 (N.D. Cal. June 18, 2019) ("[G]ranting leave to amend would be futile in this instance as Plaintiff's claims are barred [by Section 230]."); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 792 (N.D. Cal. 2021) (same).

**B.     In The Alternative, This Court Should Dismiss Plaintiff's Section 15(d) Claim And His Claim for Enhanced Statutory Damages**

If the Complaint is not dismissed in its entirety, Plaintiff's Section 15(d) claim and his claim for enhanced statutory damages should be dismissed.

1. **Plaintiff's Section 15(d) Claim Should Be Dismissed Because He Does Not Plausibly Allege that X Disclosed His Biometric Data**

Plaintiff's Section 15(d) claim should be dismissed because the Complaint does not plausibly allege that X disclosed his "biometric identifier" or "biometric information" to anyone. Section 15(d) provides that a private entity shall not "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information" unless certain conditions are satisfied. 740 ILCS 14/15(d).

Plaintiff's Section 15(d) claim is based on a single conclusory allegation, "[o]n information and belief," that X disclosed the results of PhotoDNA's "analysis to third parties, including but not limited to its affiliates and/or Microsoft." Dkt. 1-2 ¶ 53. In support, Plaintiff cites a single statement in Twitter's Privacy Policy, which states: "We may share information amongst our affiliates to provide our products and services." *Id.* ¶ 53 n.6.

But the Privacy Policy addresses the sharing of information related to the platform's *registered users*, not to persons who are merely depicted in images uploaded to Twitter. The Privacy Policy therefore does not support Plaintiff's "information and belief" allegation that X disclosed his biometric data to its affiliates and/or Microsoft. And as this Court has held, an "information and belief" allegation by itself is too thin a reed on which to rest the Section 15(d) claim. *See Heard*, 440 F. Supp. 3d at 969 (Pallmeyer, C.J.) (holding that the plaintiff "is not entitled to plead disclosure [under Section 15(d)] based upon information and belief" and that courts are not "required to credit rank speculation").

Thus, Plaintiff's allegations are insufficient to state a Section 15(d) claim. The claim should be dismissed.

### 2. Plaintiff's Claim for Enhanced Statutory Damages Should Be Dismissed Because He Fails to Plead Recklessness or Intent

Plaintiff requests enhanced statutory damages of $5,000 for "each and every intentional and reckless violation of BIPA." Dkt. 1-2 p. 15. That request should be dismissed because Plaintiff fails to allege how X acted intentionally or recklessly. Although a defendant's state of mind may be "pleaded generally" at the pleading stage, *Triad Assocs., Inc. v. Robinson*, 10 F.3d 492, 497 (7th Cir. 1993), Plaintiff must assert "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618-19 (N.D. Ill. 2019) (citation omitted).

Plaintiff does not satisfy that pleading requirement here. The Complaint mentions X's supposedly "intentional" violations of BIPA only in the prayer for relief, Dkt. 1-2 p. 15, and otherwise fails to allege any facts to support that claim. In addition, the Complaint's basis for alleging that X acted "recklessly" rests entirely on a conclusory allegation that "Defendant knew, or was reckless in not knowing, that the software it was using would be subject to the provisions of BIPA, yet Defendant failed to comply with the statute." *Id.* ¶ 57.

This Court has routinely dismissed claims of intentional and reckless BIPA violations where plaintiffs have relied on similarly bare state-of-mind allegations. *See, e.g.*, *Rogers*, 409 F. Supp. 3d at 619 (dismissing under Rule 12(b)(6) a "claim of intentional and reckless conduct" because plaintiff's "conclusory statement of [defendant's] intent is insufficient to allow us to infer that [defendant] acted intentionally or recklessly and does nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed to meet the strictures of Section 15"); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing under Rule 12(b)(6) a "claim for damages based on intentional and reckless conduct" where

plaintiff did "not allege any substantive details regarding whether the allegations were reckless or intentional"). The Court should do the same here.

## V. CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint in its entirety, with prejudice. In the alternative, Plaintiff's Section 15(d) claim and his claim for enhanced statutory damages should be dismissed.

Date: September 25, 2023

Respectfully submitted,

*/s/ Robert C. Collins III*
Robert C. Collins III, one of the Attorneys for Defendant X Corp.

Robert C. Collins III (Illinois Bar No. 6304674)
  robert.collins@lw.com
Kathryn A. Running (Illinois Bar No. 6330369)
  kathryn.running@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

## CERTIFICATE OF SERVICE

I, Robert C. Collins III, hereby certify that on September 25, 2023, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which provides service to all counsel of record.

/s/ *Robert C. Collins III*
Robert C. Collins III, One of the Attorneys for Defendant X Corp.

Robert C. Collins III (Illinois Bar No. 6304674)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: robert.collins@lw.com